# Charleston.

## DAVID HEDRICK *vs.* SAMUEL S. HERN AND WIFE *et al.*

### January Term, 1871.

H. procures the posting of advertisements for the sale of the lands of his wife's father, who is deceased, signed "The heirs." At said sale, which is by public auction, H. bought one tract himself, and H. K. also bought one adjoining. Each takes possession of the tract purchased by him. Subsequently they agree on a division line and set a fence thereon, and agree as to the portion of the fence to be kept up by the parties respectively. H. receives, without objection, the full amount of the purchase money for his wife's share of the land purchased by H. K. H. afterwards declares his intention to be to convey to H. K., when the other heirs of his deceased father-in-law would convey to him, the property also purchased by him at the sale. Seven or eight years afterwards H. and wife bring their bill to set aside the sale to H. K., and to declare a deed made by the co-heirs of the wife to H. K., to be void, and require the latter to restore possession and pay rents and profits for the use of the lands purchased by him. The co-heirs of the wife are made defendants also with H. K. HELD:

    I. That H. cannot, under the circumstances, be heard to rescind the contract and oust his vendee of his possession.

    II. That H. K. is entitled, under his purchase, to whatever interest H. had in the land in right of his wife, and it was not competent for H. and his wife, or either of them, during their coverture, to file a bill for possession or partition of the land purchased by H. K.

    III. Not a proper case for decree between the co-defendants H. K. and the residue of the heirs.

Bill brought in the circuit court of Greenbrier county, in March, 1868, by S. S. Hern and wife, against defendant Hedrick, and the heirs of John Hutsonpiller. As but one of the numerous errors assigned in the decree below, was considered by this court, it is unnecessary to state any matters, except such as pertain thereto.

The facts in the case appear to be that Hern, the plaintiff in the suit, procured an advertisement for the sale of the lands of his deceased father-in-law Hutsonpiller, in December, 1861, to be posted in the vicinity of the lands, which consisted of two tracts, on one of which he resided; that the advertisements were signed " the heirs." That the sale was at public auction, and Hern bought the tract on which he resided, and defendant Hedrick bought the other. That Hedrick paid to the administrator of Hutsonpiller part of the purchase money, to some of the heirs themselves a part, and to Hern a part. That the heirs, except Hern and wife, joined in a deed to Hedrick, conveying him the land. That Hern agreed to do so, if the heirs would make him a deed for the tract bought by him. That after the sale, in 1862, Hern and Hedrick agreed upon a line between the tracts of land so purchased by them, and joined in placing a fence on it, and further agreed which half they were respectively to keep in repair. The bill in this cause, filed by Hern and wife, asked that the sale to defendant Hedrick be set aside, and the deed by the other heirs be declared void; that Hedrick be required to restore possession, and to pay rents and profits for use of the land.

The court below ordered a partition of one-sixth of the land to female plaintiff Hetty Hern, as daughther and heir of Hutsonpiller, deceased, which the commissioners appointed to carry out the decree, made wholly on the tract purchased by Hedrick.

From the decree of confirmation, which was rendered in June, 1869, the defendent Hedrick appealed to this court.

Hon. N. Harrison, Judge of the circuit court of Greenbrier, presided on the hearing of the cause.

*J. W. Davis*, for the appellant.

This was a sale of land, made by the husband, the fee being in the wife. The husband was in by his curtesy inchoate. His wife cannot sue without joining him, and he is

in such an attitude that a court of equity will not aid him, though it might not assist his adversary to enforce the contract. *Brown* v. *Wiley*, 2 West Virginia; *Letcher* v. *Cosby*, 2 Marshall, 106. "Though a contract may not be enforcable by reason of the statute of frauds pleaded, yet the contract will be a complete defence to one in possession who has acted fairly." *Ib.* and 1 Maddox Chancery, 305. But the contract, as made by Hern, could be enforced as against him. He received the purchase money; he put the purchaser in possession, by agreeing as to the lines; he stood by and saw the purchaser improve the land, and as to his life estate, a chancellor would execute the contract. 2 Lomax Digest, top page 50, side 39, § 10 and 11. *Pym* v. *Blackburn*, 3 Vesey, 38. That Hern had a life estate cannot be questioned, such an one as he could sell. 2 Kent, 110, 111 and 112. *Digamette* v. *Allen and wife*, 5 Grattan, 514. Hern had the right to the possession, and his right has not expired. *Digamette* v. *Allen and wife*, 5 Grattan, 514.

Having parted with the right to Hedrick, how could his wife sue? Her right is in abeyance until his death. The court is required by the Code, p. 613, § 3, chapt. 129, to refer the cause to one of the commissioners of the court, unless the parties agree on a special commissioner. From the bill, the allotment to Mrs. Hern, and other papers, it is certainly true that Mrs. Hern's part of the entire real estate left by her father, was assigned to her out of this tract, whilst the papers in the cause show that Hern bought one tract of the land decended to the heirs of John Hutsonpiller. This was improper, for by the deeds from the other heirs of John Hutsonpiller, Hedrick had acquired a title to all the one hundred and ninety-two acres, except the part that descended to Hetty. And if she might have received all her share out of the 192 acres bought by Hedrick, there is not enough in the cause to enable her to do so. But it was manifestly erroneous and improper to give Hetty her interest in all the estate, out of the 192 acres sold to Hedrick. It was error in the court to refer the cause to a

commissioner to ascertain the rents, for the rents were coming to plaintiff, S. S. Hern, and he had parted with the land to Hedrick. 5 Grattan, 514. And yet the court directs an account of the rents, so that they may go to Mrs. Hern, when they belong to her husband or his alienee.

This case shows fraud on the part of the plaintiff, and fraud and conspiracy on the part of all the heirs of John Hutsonpiller. Kettinger proved that he wrote the advertisements by direction of Hern, and signed "The heirs;" that S. S. Hern told him to do so. Peter Williams proved that Hern said Hedrick would be sued, but he would have nothing to do with it. J. J. Livesay and John Hedrick proved Hern present on the day of sale and assenting, and he gives a receipt for the money and described the land, and says this was to go on the last payment. Now, upon what pretext can S. S. Hern come into a court of equity and ask relief? and what right has Hetty Hern during the life of her husband ?

*John W. Harris,* for the appellees.

If there was a parol contract to convey, there has been no such part performance as will take the cause out of the statute.

1. Assuming that the purchase money has been paid, this is not sufficient. *Jackson* v. *Cartwright,* 5 Munf., 318; *Anthony* v. *Leftwich,* 3 Rand., 255; 2 Lom. Dig., side p. 42, § 12, and cases cited. But, as previously shown, nothing was paid Hern but confederate money. And of this he received only 500 dollars, while the proof shows that Hedrick bought 193 acres of land at 34 dollars and 53 cents per acre, making in the aggregate 6,664 dollars and 29 cents, and the interest of the plaintiffs, is one-sixth, 1,110 dollars and 71 cents.

2. Nothing was done by Hern which amounted to part performance. The usual act necessary to constitute part performance, the putting of the vendee in possession, is not only not shown, but not alleged. What, then, did he do ? He caused, in the first place, notice of the sale, signed "The

heirs," to be posted. It was never before contended that the advertisement of a sale was proof of part performance. Secondly, he attended the sale and bought property himself. It may be presumed that he paid for it in good money, as the heirs set up no claim thereto. Thirdly, he staked off a division fence. This was necessary to the protection of his own land, as to which there was no dispute. Fourthly, he said, years ago, that if the heirs would make him a deed to the mill property, he would join in the deed to Hedrick. The declaration by me to a third party, that if you would convey me your property in Charleston, I would convey to a fourth party my house in Lewisburg, could scarcely be construed into a part performance of a parol contract with that fourth party. And this was all that was said or done. Now, what say the authorities? An agreement will not be considered as partly executed (and here they have not even proved an agreement) unless the act done could have been done with no other view or design than to perform the agreement; and unless it appears that the acts could not have been done except with this view, the agreement will not be taken out of the statute. Sug. Vend., 83; *Gunter* v. *Hasley,* Ambl., 586; 2 Lom. Dig., pp. 43–44, side, § 23. The acts must be unequivocal, and such as do not admit of compensation. *Frame* v. *Dawson,* 14 Ves., 386. And the prevailing disposition of the courts is to uphold and enforce the statute, and thus restrain, as far as possible, the powers heretofore exercised by the courts of chancery on this subject.. 2 Lom. Dig., *ubi supra; Anthony* v. *Leftwich,* 3 Rand., 238; *Phillips* v. *Thompson,* 1 John. Ch., 132; *German* v. *Machin,* 5 Paige, 289.

BERKSHIRE, *President.*

The view which I must adopt of this case renders it unnecessary to consider more than one of the numerous objections assigned as error: It is, whether the complainant's bill ought to have been dismissed, upon the facts disclosed by the record. This depends on whether such facts show

a verbal contract on the part of the complainant, Samuel S. Hern, for the sale of his interest in the part of his wife's lands descended to her from her deceased father, which was purchased by the defendant Hedrick, and performance on the part of the latter such as would justify or require a court of equity to compel the former to execute.

It appears that said Hern caused the real estate of his wife's father, John Hutsonpiller, deceased, to be advertised in the name of the heirs, for sale, at public auction, at a designated time and place; and that such advertisements, at his instance, were posted at several public places in the county, one of them being at the mill on said real estate, then in the possession and occupancy of Hern. Also, that the sale of said real estate was made in pursuance of such advertisement, at which sale Hern was present, purchased the mill property himself, and made no objection whatever to the sale to Hedrick. That Hern afterwards received, without objection, the full amount of the purchase money for his wife's share of the land purchased by Hedrick, in confederate money, and gave a receipt therefor, or for the last payment of the same. That after the sale, Hedrick took possession of the part purchased by him, and Hern also took possession of his part, and they also went on the premises, agreed upon, and staked off the division line between them, placed the partition fence upon the line, and agreed that each should, in the future, keep the one-half of said fence in repair; and Hern having the choice, selected the part or end next his own premises.

Further, that Hern, some time after the purchase of Hedrick, stated that he would make a deed to Hedrick as soon as the heirs made him a deed for the part purchased by him. He also stated, as late as 1867, that the heirs intended to sue Hedrick for the land, but he would have nothing to do with it.

It does not appear that it was any part of the contract or agreement for the sale of the lands, that the purchase money should be paid in confederate money, nor that any-

thing was said at the time in reference to the kind of funds in which payments might be made.

We have then presented, in this instance, the case of a verbal contract for the sale of real estate; the receipt of the purchase money by the vendor; the delivery of the possession to the vendee who continues to hold possession and improve the property for many years, with the knowledge and acquiescence of the vendor. The question therefore recurs, ought the vendor who seeks, in a court of equity, under such circumstances, to repudiate and *rescind* his contract and oust his vendee of his possession, to be entertained for such a purpose? It appears to me, not, and that to do so, would be an unwarrantable disregard of the pervading and cherished maxim of equity which always requires that a party who invokes the jurisdiction of the court, and *asks* equity, shall first *do* equity unto others. This principle, it is clear, would require Hern to comply with the contract on his part, and I am of the opinion it ought, under the facts of this case, to be enforced.

From this it results that, as Hedrick is entitled, under his purchase, to whatever interest Hern had in the land in right of his wife, which was the possession, at least, during coverture, it was not competent for the complainants, or either of them, during their coverture, to file a bill for possession or partition of the land so purchased by Hedrick. Nor do I think it would be proper in this case, to adjudicate any questions touching this sale, that might arise between Hedrick and his co-defendants. *Godfrey and wife* v. *Heavener et al.*, 3 W. Va. Rep., 426.

I think, therefore, that the case should be reversed, the bill dismissed with costs here and in the circuit court, but without prejudice to the rights of Hetty Hern, the female complainant.

The other Judges concurred.

DECREE REVERSED.