# Wheeling.

| 14 | 243 |
| 39 | 172 |

## TRACY *v.* TRACY'S HEIRS, *et al.*

Decided November 30, 1878.

1878
Special Term.

1. Where the proof shows, that a purchaser of a tract of land under a parol contract for the sale thereof, has been put into possession thereof by the vendor pursuant to the contract, and payment of the purchase money has been made according to the terms of the contract, and valuable improvements have been made on the land by the purchaser on faith of the contract, and the purchaser has held continuously peaceable possession thereof for over twenty years, the statute of frauds cannot be successfully pleaded in bar to the specific performance of the contract in a court of equity.

2. It is error for the court, under such circumstances, to declare by its decree, that the contract was not fully established, and to undertake to make a contract and enforce it against the plaintiff, not set up by the pleading, and not justified by proof as a contract between the vendor and vendee.

3. Where the court is satisfied; and so declares by its decree, that certain parties "have no title or color of title to the said '*Maud Hollow*' tract of land, the same not being embraced in the trust deed, under which they purchased," they having litigated their pretensions in that respect by their answers to plaintiff's bill, the court should have decreed costs against them.

Appeal from and *supersedeas* to a decree of the circuit court of Mercer county, rendered on the 20th day of October, 1873, in a cause in said court then pending, in which Roland J. Tracy was plaintiff, and Edward G. Tracy and others were defendants, granted on the petition of said Roland J. Tracy.

Hon. Evermont Ward, judge of the ninth judicial circuit, rendered the decree appealed from.

*Davis* and *Gouch*, for appellant.

No appearance for Appellees.

MOORE, JUDGE, furnishes the following statement of
the case :

Rowland J. Tracy filed his bill in chancery, at rules
in the clerk's office of the circuit court of Mercer county,
May, 1870, to enforce specific execution of a parol con-
tract alleged to have been entered into between his father,
Edward H. Tracy, and the plaintiff, in the year 1852
or 1853, for the sale to plaintiff by his said father of a
tract of land, supposed to contain about one hundred
and fifty acres, being a part of the tract upon which said
Edward then resided, and known as the " *Maud Hollow
Place.*" Price agreed to be paid $100.00, which plaintiff
was to pay to one James Byrnside on a debt due Byrn-
syde from said Edward.

Plaintiff alleges, that his father went with him upon
said land and marked off the boundaries thereof and put
him in possession thereof, and that he has held continu-
ous and uninterrupted possession thereof ever since ;
and that pursuant to said contract, plaintiff paid to said
Byrnside for his said father on January 1, 1853, $40.00,
and on February 4, 1854, $30.00, and at a subsequent
time the further sum of $30.00, making in the aggregate
$100.00, the sum agreed to be paid for the land, and was
in full execution of said contract; that plaintiff took re-
ceipts from Byrnside for said money, but they were lost
or destroyed during the late war, but the two first men-
tioned sums are endorsed on the note of his father to
Byrnside as credits, which note is exhibited with the
bill.

Plaintiff further alleges, that he has made valuable
improvements on said land, since it has been in his posses-
sion, which enhanced the value of the land to the extent
of three or four hundred *per cent.* on its original value ;
that a deed of trust was given upon a tract of some two
thousand acres of land by his father to secure the pay-
ment of a debt due from his father to Parkinson Shu-

mate, of which tract said one hundred and fifty acres were a part; but said one hundred and fifty acres were not intended to be embraced in said trust deed.

Plaintiff further alleges the death of his father, after having made and published his last will and testament, by which he directed his executors to sell said "Maud Hollow" tract of land, and bequeathed to plaintiff the excess above $500.00, of the proceeds of said sale. Plaintiff alleges his inability to account for this, except upon the grounds of the infirmity, physical and mental of his father at that time, and that he was laboring under the misapprehension in reference to the payment by plaintiff of the purchase money; that he is informed, that his father, at the time he made his will, was under the false impression, that plaintiff had not paid the $100.00 to Byrnside, as he had contracted to do. He charges, that the sale to him was *bona fide*, and that he has fully complied with the contract on his part, and having been put in possession thereof, and made valuable permanent improvements thereon, is such performance of the contract, as fully authorizes a court of equity to decree a specific execution thereof. Plaintiff alleges death of Parkison Shumate, having made a will and bequeathed to his sons, Henderson and Rufus, the debt secured by said deed of trust; that afterwards said Henderson and Rufus purchased from the heirs at law of said Edward Tracy, deceased, a part of the tract of land embraced in said deed of trust, which they agreed to take in payment of said debt, leaving however still due on said debt about the sum of $1,800.00, and subsequently the residue of said lands embraced in said deed of trust was sold thereunder, and said Henderson and Rufus became the purchasers thereof, at a price about sufficient to pay off the balance of their said debt; and by virtue of said purchase they now assert title to said one hundred and fifty acres sold to plaintiff by his father; and have instituted an action of ejectment to recover the same.

Plaintiff prays, that said Shumates be enjoined from

all proceedings in said action at law, until the matters in his bill can be heard and determined in equity, and that specific execution of the contract he sets up be decreed, and that a conveyance of the legal title of said one hundred and fifty acres be decreed to him, &c.

He filed with his bill as exhibits the said Byrnside note, the will of his father, and the deed of trust to Shumate.

The bill was answered by the Shumates; claiming that said tract of one hundred and fifty acres was included in the sale made to them under the deed of trust, and denying that plaintiff ever had any title, legal or equitable, to the same, or that there was ever any contract entered into between plaintiff and his father, as alleged, or that plaintiff ever paid one cent on account of said purchase money to Byrnside, or any other person.

The infant children of Zolman K. Tracy, deceased, answered by guardian *ad litem*; and the bill was taken for confessed as to the adult defendants, who did not appear after service of process and publication. The court on the 20th day of October, 1873, decreed, "that the parol contract set up in plaintiff's bill, between plaintiff and his father, Edward H. Tracy, now deceased, is not sufficiently established by the proofs in this cause to justify the court in decreeing a specific execution of the same, as prayed for in plaintiff's bill; and it further appearing to the court, that the plaintiff paid for the said Edward H. Tracy during his lifetime the sum of $100.00, to-wit: $40.00 on the 1st day of July, 1853, and $30.00 on the 4th day of February, 1854, and $30.00 on the 8th day of May, 1857; and it further appearing by the last will of the said E. H. Tracy, deceased, dated the 10th day of August, 1860, that the testator directs the tract of land known as the "Maud Hollow" place, (being the same tract which plaintiff in his bill alleges was sold by the said E. H. Tracy to him,) to be sold by his executors, and further directs that whatever amount the said tract of land brings at such sale over and above the sum of

$500.00 shall go to the plaintiff; and the court being

further of opinion that the plaintiff is entitled to the said tract of land upon the payment of the sum of $500.00, with legal interest thereon from the 10th day of August, 1860, until paid, subject however to a credit of the above mentioned $100.00, together with the interest which had accrued thereon up to the 10th day of August, 1860, amounting to the sum of $135.84 on the said 10th day of August, 1860 ; and the court being also of opinion that defendants, William H. Shumate and Rufus Shumate, have no title or color of title to the said "Maud Hollow" tract of land, the same not being embraced in the trust deed under which they purchased, it is therefore adjudged, ordered and decreed, that unless the plaintiff, or some one for him, shall on or before the first day of the next term of this court, pay to the executors of the last will and testament of the said Edward H. Tracy, deceased, the said sum of $500.00, with legal interest thereon from the 10th day of August, 1860, until paid, subject to the credit of $135.87, as of the 10th of August, 1860, that then James H. French, who is hereby appointed a special commissioner for the purpose, shall after giving public notice of the time and place of sale by advertisements posted somewhere on said premises, at Frenchville, at the front door of the Mercer court house and at Shumate's store at the mouth of East river, in Giles county, proceed to sell the said "Maud Hollow" tract of land, in the bill and proceedings mentioned, to the highest bidder, at public auction, for cash in hand sufficient to pay the expenses of such sale, and as to the residue on a credit of six, twelve and eighteen months, in three equal installments.

From this decree the plaintiff obtained an appeal to this court.

MOORE, JUDGE, delivered the opinion of the Court :

It is well settled, that "when there has been a part performance of a contract for the sale of land by the

purchaser being put into possession of the property, and payment of the purchase money, or a part thereof, and an offer to pay the residue according to contract, and valuable improvements have been made on the land by the purchaser on the faith of the contract, the statute of frauds cannot be successfully pleaded in bar to the performance in a court of equity." *Lowry* v. *Buffington et al.*, 6 W. Va. 255.

The plaintiff alleges a parol contract with his father for one hundred and fifty acres of land, known as the " Maud Hollow Place," for which he agreed to pay for his father $100.00 on a certain note, which James M. Byrnside held against his father, and that he did pay the $100.00 to said Byrnside pursuant to said contract; and he files the note with his bill. He alleges further, that his father went with him upon the land, and marked out the boundaries thereof, and put him in possession thereof, and that he has continued in possession thereof continuously ever since, and has placed thereon valuable permanent improvements, which have enhanced the value thereof to the extent of three or four hundred per cent on its original value. With the exception of the Shumates, the bill is taken for confessed by the adult defendants; and as to the infants it is answered by their guardian *ad litem.*

The Shumates, who set up claim to the land as purchasers under the deed of trust, deny, that plaintiff ever made such a contract with his father, or that he ever paid one cent of money under such a contract either to Byrnside or any other person. Does the proof sustain the plaintiff's allegations as to the contract?

Thomas B. Crawford in a rigid examination testified, that he knew the "Maud Hollow" tract of land; that he had heard Edward H. Tracy say he had sold his son, the plaintiff, the land; that his understanding was that plaintiff was to pay $100.00 to Byrnside; that it had been twenty years since plaintiff contracted for the land (his deposition was taken May 24, 1871); that plaintiff

had held it in possession for that time; and that it had

been highly improved within that time, a dwelling house and barn, seventy-five or eighty acres cleared, a large amount had been fenced that was not cleared, and the fencing enclosed the cleared land; "the dwelling house is a tolerable good hewed-log house; there is a tolerable round-log tobacco barn," and "probably a stable built of round logs;" plaintiff employed Meadows to do the work on the land; that all or nearly all of "Maud Hollow" was in woods, when plaintiff bought; and that the seventy-five or eighty acres had been in cultivation some seventeen or eighteen years; he was present part of the time, when the contract was made; old Mr. Tracy told him, that plaintiff was to pay Byrnside the $100.00 for the land.

Elizabeth Crawford states, that the contract was made "in the year 1850, in the corn field." She says, "Mr. Edward Tracy came to us in the field. He says: 'Roland, if you want this piece of land you can take it, and pay Mr. Byrnside $100.00, and you can have the land.' Roland replied back: 'I don't think I can pay for it.' The old man replied back: he 'reckoned Byrnside would not push on him; he could have his own time for it.' Roland replied to him, 'he was willing for Reuben Granston and N. B. French to value the land.' Mr. E. H. Tracy replied: 'Roland, the land is worth $100.00.' R. J. Tracy said he would take the land and pay Byrnside $100.00." After that conversation in the field, she says: "Mr. Edward H. Tracy came to my house, and put an ax over the yard fence, and said: '*Me* and Roland has been marking out some land up here.'" She corroborates her husband's statements, as to the time plaintiff has held the land, and the improvements made by him.

Thomas Little knew the land; it has been in plaintiff's possession for about twenty years, and there are improvements made on it; thinks it is worth $6.00 to $8.00 per acre. He wrote the will of Edward H. Tracy, by which

"he directed the 'Maud Hollow,' to be sold, and he expressed himself in this language, to the best of my recollection, that he intended said land for R. J. Tracy, provided he had complied with certain arrangements, which he had failed to do."

Calvin Fletcher corroborates the other witnesses as to the time plaintiff has held the land, and the improvements made thereon.

Herman White testified: that he heard a conversation between plaintiff and his father at French's mill, about the commencement of the war, or before. "R. J. Tracy said to his father, he wanted him to make a deed to that land, as there were two acting justices present that day. His father said to R. J. Tracy, he could not do it that day, for "Rhoda is sick and I have come for medicine for her. I will make it some other time. It ought to have been done long ago."

L. M. Stinson, estimates the improvements at about $900.00.

Elijah Bailey was sheriff in 1857 or 1858, and held an execution in favor of Byrnside against E. H. Tracy *et al.*, and received an order from Byrnside requesting him to enter a credit on the execution, his recollection is that Edward H. Tracy told him that Roland Tracy should have paid something upon that debt, and some time after that, and while the execution was still in his hands, Roland Tracy furnished him the order referred to. (The order was filed with the papers of the cause, but has been mislaid and is not now in the record.)

John C. Corner saw plaintiff pay Byrnside $40.00 for the benefit of plaintiff's father, paid in Peterstown about nineteen years ago.

On behalf of the defendants, Rhoda Tracy, widow of Edward, testified, that she often heard her husband say he owed Byrnside a debt.

James S. Archer testified, that Edward H. Tracy said, he owed Byrnside a debt, "and my understanding was that R. J. Tracy was to pay it, but he failed to do it, and

the old man had to pay it with his soldier claim. I had this understanding about the year 1857, when I was working on Edward H. Tracy's farm." On cross-examination he testified, that Edward H. Tracy said that plaintiff was to pay said debt for the "Maud Hollow" tract. He heard plaintiff's father say, when he had to pay that debt, that plaintiff should never have the land. Witness's father leased of the plaintiff, and witness moved on the lease with his father.

On the part of the plaintiff James M. Byrnside testified, that Edward H. Tracy owed him a debt a good many years ago, nearly twenty. It is his impression he heard him say, that he had sold that land to the plaintiff, but is not positive, that he heard him say so. He, witness, saw by an endorsement on the bond exhibited, that plaintiff paid to him $40.00, the other credit of $30.00 was endorsed in the hand writing of his father-in-law the late Capt. Peters, with whom he left the note for collection. He has no idea of the number of payments plaintiff made to him in witness's business transactions, "could not even guess at it."

Such is the character of the testimony, and I am impressed with its weight towards establishing the contract as alleged. The circuit judge must have given great weight to it, because he not only allows the plaintiff a credit for the $100.00, but states in the decree specifically, that the plaintiff paid it for Edward · H. Tracy ; and in the very sums as alleged in the bill. Yet, notwithstanding the court was thus satisfied that the plaintiff did make those payments for his father, and as the testimony showed, that the contract was as alleged in the bill, and that the plaintiff had performed his part thereof, it nevertheless declared by its decree, that the contract was not fully established, and actually undertook to make a contract for the plaintiff, not set up by the pleadings, and not justified by the proof, as a contract between the parties, by decreeing that the plaintiff is entitled to the said tract of land upon the payment of the sum of $500.00,

with legal interest thereon from the 10th day of August, 1860, until paid, subject however to a credit of the above mentioned $100.00," &c., and directing the land to be sold to satisfy said $500.00, &c., unless the plaintiff, or some one for him, pay the said sum on or before the first day of the next term of the court, with legal interest thereon from August 10, 1860, until paid."

The decree in that respect is erroneous, and should be reversed; and, as the appellant's counsel has well said, the contract should be enforced. The vendee had been in possession for twenty years, when the bill was filed, twenty-three years at the time of the hearing; had taken the land when in a state of nature; improved it by clearing seventy or eighty acres, fencing and improving generally; the vendor put the vendee in possession under the contract; the lasting and permanent improvements were made by the vendee under the eye of the vendor and with his consent; the price agreed on was paid by the vendee as required by the vendor. Certainly it is as strong and clear a case as *Hedrick* v. *Hern et al.*, 4 W. Va. 626, and the contract should be enforced.

As to the pretensions made by the Shumates, although the bill prays that they be enjoined from prosecuting their action of ejectment against the plaintiff, then pending in the same court, the record does not show, that the court ever took any notice of the plaintiff's error in that respect, as no order of ejectment appears to have issued. But the court does not by its decree declare its opinion, that said Shumates "have no title or color of title to the said 'Maud Hollow' tract of land, the same not being embraced in the trust deed, under which they purchased." The court being, I think rightly of that opinion, should have decreed costs in this suit against said defendants, Shumates. [*Ross* v. *Gordon*, 2 Munf. 289.]

And as the metes and bounds of the said "Maud Hollow" tract have not been fully established, I am further of opinion, that said tract of land should be surveyed,

in order that a deed by metes and bounds may be made to the plaintiff in execution of said contract; and that the decree of the circuit court therefore ought to be reversed and annulled, with costs to the appellant; and the cause remanded to the circuit court for further proceedings to be had therein according to this opinion and the rules governing courts of equity.

THE OTHER JUDGES CONCURRED.

DECREE REVERSED, CAUSE REMANDED.