## CHARLESTON.

| 44 | 47 |
| 47 | 552 |
| 47 | 698 |

Schamp v. Security Savings & Loan Association.

(Dent, Judge, *dissenting*).

Submitted June 11, 1897—Decided November 20, 1897.

1. Married Woman—*Charge on Separate Estate—Burden of Proof.*
    Under section 12, chapter 66, Code, 1891, to sustain a charge on the separate estate of a married woman, when contested, it must appear that the debt is valid under that section. The creditor must show this. (p. 48).

2. Married Woman—*Charge on Separate Estate—Specification.*
    Where it appears that money is borrowed for the purposes specified in the second clause of section 12, chapter 66, Code, 1891, the instrument charging a married woman's separate estate must specify the purpose of the loan. (p.) 49.

Appeal from Circuit Court, Wetzel County.

Bill by Elizabeth Schamp against the Security Savings & Loan Association to cancel a deed. From a decree for plaintiff, the defendant appeals.

*Affirmed.*

W. McG. Hall, for appellant.

Basil T. Bowers, for appellee.

Brannon, Judge:

By deed dated 27th April, 1892, Elizabeth V. Schamp and her husband conveyed to Charles W. Barrick, trustee, a tract of land, by deed of trust, to secure the Security Savings & Loan Association a loan of money,

and later Mrs. Schamp brought a chancery suit to cancel the deed, and obtained a decree canceling it, and the association appealed. The claim of Mrs. Schamp for relief is based on the contention that the deed of trust is void, because, as she was a married woman, it was contrary to section 12, c. 66, Code 1891. That section provides that "a married woman may charge her separate property and estate, real and personal, and the rents, issues, profits and increase thereof with the payment of her debts, in the following cases, in the following manner, and to the following extent, and not otherwise: First. A debt created in the purchase of real or personal property to be held as her separate property and estate. Second. A debt created for buildings and other improvements erected and made on her separate real property, and for money borrowed by her for the payment of the purchase money of such real property, or for the payment of such buildings and improvements thereon. But every such charge must be evidenced by a writing duly executed and acknowledged by her and duly recorded in the proper clerk's office, stating the amount of the debt and for what it was created. Third. A debt created for the wages of a laborer or domestic for work or service done or performed for her. Fourth. A debt created by her in carrying on any trade or business, as provided for in the next section.   *   *   * Fifth. A debt created by her for the necessaries of life for herself and her children." The construction of this statute, as I see it, is that a married woman is totally prohibited from charging her estate with any debt except in the cases specified in the statute. Those cases are exceptions out of the disability created for her by the statute. For you will observe that the statute says that she may charge her estate "in the following cases, in the following manner, and to the following extent, and not otherwise." It specifies the cases. It specifies for some cases a manner of charging, and by the use of the words, and not otherwise, it prohibits any other charges than those made valid by itself. I repeat that it disables her with certain exceptions, and he who would charge her estate with a debt must bring himself within those exceptions; and if the charge is to be sustained by the second clause, it must be

shown to come under it by the instrument making the charge, and it alone.

The deed of trust in this case says that the debt created by Mrs. Schamp was a loan. The defendant's answer says that at the time of the loan Mrs. Schamp informed the defendant that the money was to be used in paying a five hundred dollars deed of trust existing on the land, and for improving the farm. Thus the answer shows that part of the money was to go to a purpose for which she could not borrow, because the statute does not authorize her to borrow to remove a pre-existing lien, except for purchase money, and it is not shown to be for purchase money. There are only two borrowings valid by the statute; that is, to pay purchase money for realty or for buildings and improvements. And, as to the use of the money for improvements, that very fact demanded that the deed of trust should declare that the money was to be used for improvements, and it does not. I say the answer admits notice to the company that the money was to be used for improvements, and it relies upon that fact, and that fact alone requires its statement of such purpose in the deed; the answer thus stating a use for part of the money for which it could not be borrowed, and as to the other a use that must be specified in the deed. While in the case of a valid loan the loaner need not see that the married woman applies the money to the proper uses, still, if he knows of an improper use, he violates the statute. By improper use I mean a loan not recognized by the statute; and surely, where the loaner knows the money is to be used for paying purchase money for realty, or for payment of buildings and improvements, he must put that purpose in the deed of trust. It cannot be said that this loan is valid because used in acquiring personal estate. A debt may be created in the very act of acquiring personal or real estate, but there can be no borrowing for the purpose of acquiring personality, or to pay a debt existing for its prior purchase, for the power to borrow is limited to the purposes of paying purchase money on realty or for improvements on it. No other borrowing is legitimate under the statute. This was purely a loan. The law can look at it in no other light. It was not to pay for stock. It could not be; for the answer

and other papers show that the purchase of the stock had
been made before, and there can be no loan to pay a pre-
existing debt for purchase money of personalty, nor, in-
deed, to purchase it. I cannot agree with the view of
JUDGE DENT that only pre-existing debts, and not fresh
loans, come under the ban of this statute. He suggests
the only ground to sustain this deed, but I respectfully
say that it is not tenable. This statute was made to de-
fend a married woman's separate property against her own
improvidence, want of business capacity, and importunity
and duress by her husband. And we all know that there
is more danger of loss of a married woman's estate from
new loans than from old debts. She is not very likely to
charge her property with previous debts, but we will all
know how likely she is to do so under the stress and pinch
of present need of herself or her husband. There was
really much more need to defend her against poverty and
ruin from loss of her separate estate, from new loans, than
from antecedent debts; and, if the statute is given the con-
struction that it applies only to such prior debts and not to
new loans, it emasculates it of its strength, and defeats its
plain purpose. Decree affirmed.

DENT, JUDGE, (*dissenting*):

I dissent from the conclusion reached in this case for the
following reasons: Elizabeth V. Schamp filed her bill in
chancery against Charles W. Barrick *et al.*, in the circuit
court of Wetzel county, for the purpose of having declared
null and void a certain deed of trust, duly executed, ac-
knowledged, and recorded by herself and husband, con-
veying a tract of one hundred and fourteen acres of land,
her separate property, in trust to secure to the Security
Savings & Loan Association of Minneapolis, Minn., the
sum of one thousand dollars loaned to the plaintiff on ten
shares of stock taken by her in the association. There is
no allegation in the bill that she did not receive the mon-
ey. On the contrary, it is admitted, both in the deed and
in the bill; nor is there any allegation as to what use it
was put, if any. The plaintiff relies for relief solely on
the grounds that the deed of trust does not comply with
the provisions of section 12 of chapter 66 of the Acts of

1891, in that it fails to set out for what the debt was created; meaning thereby for what purpose the money was expended. The defendant corporation demurred thereto, and the court overruled the same. Defendant answered, and on a final hearing the court cancelled the deed of trust as void. The defendant appealed, and now, as a first assignment of error, relies on its demurrer. This involves the construction of certain sections of chapter 66, Acts 1891, and expressly said section 12, which is in these words: "A married woman may charge her separate property and estate, real and personal, and the rents, issues, profits and increase thereof with the payment of her debts in the following cases, in the following manner, and to the following extent, and not otherwise: First. A debt created in the purchase of real or personal property to be held as her separate property and estate. Second. A debt created for buildings and other improvements erected and made on her separate real property, and for money borrowed by her for the payment of the purchase money of such real property, or for the payment of such buildings or improvements thereon. But every such charge must be evidenced by a writing duly executed and acknowledged by her, and duly recorded in the proper clerk's office, stating the amount of the debt, and for what it was created * * *." The plaintiff's sole claim, as alleged, is that the deed of trust in this case, otherwise valid, is void for the reason that it fails to comply with this section in not setting out for what purpose the money borrowed and thereby secured was expended. This section relates strictly to debts created, and not to money borrowed and unexpended. The Court is probably mislead by the language used under the second head, but by transposing the same, according to the plain intention of the legislature, it will read: "A debt created for money borrowed by her for the payment of the purchase money of her separate real property, or for the payment of such buildings and improvements thereon,"—not referring to a present borrowing, but to a past borrowing, for which a present debt exists. A married woman is not forbidden in this section to borrow money to enhance her separate estate if she wishes to do so, and execute a deed of trust on such

estate to secure the same, and, after she has it, there is no law forbidding her to do what she pleases with it, any more than if she were a *feme sole*. She can give it to her husband, pay his debts with it, or burn it up. It is her separate property, absolutely at her disposal. Under section 2 of same chapter a married woman is authorized to sell and convey her separate property, both real and personal, if her husband consents thereto and joins in the conveyance. He did so in this case. This, however, is not an outright sale, but it is equivalent thereto.

A trustee is always deemed a purchaser for value, and this deed of trust is valid, so far as the bill shows, unless made invalid by the provisions of said section 12. And such is not the case, as it was not given to secure a pre-existing debt, but to secure the repayment of one thousand dollars borrowed by the plaintiff, and which she, in so far as the allegations are concerned, is in the enjoyment of as part of her separate estate. She does not allege in what manner or whether she disposed of it at all. Nor does this make any difference, if she actually received it. Being her separate property, she had the right to dispose of it as she should see fit, the same as if it had been the proceeds of an outright sale of her real estate. Money is property, and there is nothing in the law forbidding a married woman, with the consent of her husband, converting all her other property into money, and, though so converted, it remains her separate estate until she chooses otherwise. The opinion of the majority of the Court renders the statute contradictory and inconsistent, not to say foolish and senseless. It should be the duty of this Court to harmonize and render rational the different sections of the statute, and not to make them discordant, irrational, and inoperative. Section 2 provides that "any married woman may take by inheritance, or by gift, grant, devise or bequest, and hold to her sole and separate use, and convey and devise, real and personal property, and any interest or estate therein, and the rents, issues, increase and profits thereof in the same manner and with like effect as if she were a single woman: * * * provided, that no married woman, unless she be living separate and apart from her husband, or unless her husband be *non compos mentis*,

shall sell or convey her real estate, unless her husband consent thereto by joining in the deed or other writing by which the same is sold or conveyed." Section 11 provides that "no married woman shall become the security, indorser, or guarantor of or for her husband, or for any other person for any debt or liability whatever, and every contract, agreement or conveyance made or attempted to be made by her, in any way binding or attempting to bind her separate property, real or personal, or the rents, issues, increase or profits thereof, for the payment of any debt or liability of her husband whatever, shall be absolutely null and void."

If the construction given by my associates to section 12 be correct, then the legistature did a vain and foolish thing in enacting section 11; for if a married woman cannot become indebted in any wise, or for any purpose, except as set out in section 12, then where is the necessity of section 11? It becomes a mere negative of section 12, and hence nugatory and useless. And the same thing may be said with regard to section 2 wherein it provides that a married woman "may convey and devise real and personal property, and any interest or estate therein, and the rents, issues, increase and profits thereof, in the same manner and with like effect as if she were a single woman." It cannot be maintained that she cannot make an outright sale of her property under this section, and then dispose of the money as she pleases; but the claim is that she dare not, even with the consent of her husband, pledge, pawn, or mortgage her property to any extent or amount, unless she makes known to the "lords of creation" for what special purpose she is about to use it, and that must be as designated in section 12. What a turning back of the dials of time, and resurrecting barbarous and heathen customs, when woman was regarded as the mere irresponsible slave of man! Not only this, but the law is made to out-Herod Herod, for not only is she to be protected against herself, but also against her husband. In short she is reduced to the condition of being the mere ward of the law, It is said: "The statute was made to defend a married woman's separate property against her own improvidence, want of business capacity and importunity and duress of

her husband." Now, does it do this? It simply requires her to file a writing acknowledging any debt to have been created for the benefit of her separate estate. This is no protection to her against herself nor her husband, for such a law is so easily evaded, and to such an extent that it is really no law at all, although an enactment of the legislature. Clearly, such was not the intention of the enactment, but its sole purpose was to keep a married woman from being harrassed by debts that her separate property was not liable for at the instance of unconscionable creditors of her husband, and to require *bona fide* unsecured charges against her separate estate to be reduced to writing, acknowledged by her, and recorded, so that the evidence in relation thereto would be unquestionable. Not only this, but the section is limited to contracts made by her individually, without the consent of or the uniting with her husband; thus giving her the power, without his consent or or joining therein, to charge her separate property with certain debts for her benefit by a writing, duly executed and recorded. Under this section, however, she cannot, nor was it intended that she should, charge the corpus of her real estate, but she can do this only as provided in section 2. Yet such would be the effect of the holding of the Court. Hence, to make these several provisions consistent, they would be so construed as to hold that section 2 permits a married woman to sell and dispose of all her separate property, real and personal, in any manner she may see fit, even to the extent of conveying the same as security for any debt not forbidden in section 11, by a deed of trust or mortgage duly executed and acknowledged, in which her husband joins, and that section 12 authorizes her individually to charge her seperate estate with the debts in the manner therein named, and not otherwise. This construction is placed beyond controversy by the provisions of section 16, to wit "A claim against the separate estate of a married woman for the payment of which she has charged the same shall be enforced in a court of equity *in rem* and not *in personam*. * * * And no decree shall be made in the case subjecting her separate estate to the payment of any debt claimed against her, without full and satisfactory proof having

been made of the amount and justice thereof, and that the same has been charged with the payment of such debt under section 12 of this chapter." To give this section the construction claimed would forbid a married woman executing a deed of trust on any of her property for any purpose or debt whatever, even though her husband joined therein, as such deed, like any other contract, could only be enforced in a court of equity. This certainly was foreign to the intention of the legislature, and no such law has ever existed in this State, at least subsequent to the year 1869. What existed prior thereto belongs to the dim, dubious, and unjustifiable past, so for as the rights of married women are concerned. Under the pretense of protecting her, we should cease to degrade her, and recognizing her just right before the law, we should elevate her to a place of perfect equality with her fellow man. The statute now under discussion has long since given place to a far more just and reasonable enactment, and the decision in this case can only affect deeds of trust given during the life of the statute, which was for a less period than two years. Before and since that period this deed of trust would have been perfectly valid, and there is no sufficient reason advanced why it is not valid because executed during that period. It should, therefore, be sustained, and it is upholding immorality not to do so. As this record discloses, the plaintiff obtained and used the defendent's money and on a mere legal technicality she is enabled to escape its payment. The decree should be reversed.

*Affirmed.*