# CHARLESTON.

## POTTS v. FITCH *et al.*

### Submitted June 17, 1899—Decided November 28, 1899.

1. TRUST—*Fraud.*

F. agrees with P., L., and T. that they shall jointly acquire an oil lease on ten acres of land, which he represents will cost forty dollars, and that they shall share equally in the expenses and profits of said leasehold. F. takes the lease in his own name, and, becoming aware that a valuable oil well had been drilled near by, when about to assign to P. his proportion of the lease he falsely represented to him that he had already assigned one-half thereof to L., and thereby induced said P. to accept as his share one-eighth instead of one-fourth, which he did under protest, and paid for it. Under this state of facts F. was a trustee for P., L., and T., and by reason of the fraud should not be allowed to retain the one-eighth which he withheld from P. (p. 67.)

2. STATUTE OF FRAUDS.

Such a trust is not affected by the statute of frauds. (p. 69.)

Appeal from circuit court, Wetzel County.

Bill by M. B. Potts against W. R. Fitch and others.   De-cree for defendants, and plaintiff appeals.

*Reversed.*

HALL & HALL, for appellant.

E. B. SNODGRASS and T. P. JACOBS, for appellees.

ENGLISH, JUDGE:

M. B. Potts brought a suit in equity in the circuit court of Wetzel County against W. R. Fitch, F. P. Lowther, E. J. Thompson, and Henry Oil Company, a corporation, and filed his bill at August rules, 1897, in which he claims that he and the defendants entered into an agreement to pro-cure a lease for oil and gas purposes on a certain tract of land of about ten acres situated in Tyler County, W. Va., that said parties were to share equally in the expenses and profits of same: that said Fitch attended to taking the lease, and took it in his own name; that at the time said agreement was made an oil well was being put down in the immediate vicinity, known as "Wood's Well No. I;" that, after said Fitch was advised that Wood's well had been drilled, and was a producer, but before plaintiff was aware of the fact, he met Fitch, in the presence of said E. J. Thompson, and sought to obtain an assignment of one-fourth of the lease in accordance with the contract.   Fitch, however, represented to plaintiff that he had already given to said Lowther, his father-in-law, an undivided half inter-est in the lease, leaving himself at that time only one-fourth interest, and that, if he assigned one-fourth of the lease to plaintiff, he would be left without any interest; which statement was false, as plaintiff afterwards learned. The plaintiff, relying on said false statement, agreed to ac-cept one-eighth which was assigned to him, and paid his proportion of the money therefor, and received said eighth, protesting that he was entitled to one-fourth of the entire lease.   The plaintiff also alleges that at the time the one-eighth interest was assigined to him said Fitch held three-eighth. Lowther one undivided one-fourth, and Thompson an undivided one-fourth, and that Fitch's statement to him that he had conveyed one-half interest to Lowther, and, if he conveyed one-fourth interest to plaintiff, he would have

no interest left, was false.   He also alleged that he had always been ready and willing to pay Fitch or any other person entitled to the said purchase price, or to pay the same into court, as might be ordered in this suit, and prayed that said Fitch be declared to hold said one-eighth of said lease claimed by plaintiff as trustee for him, and that he be ordered to convey said undivided eighth to complainant, or that a commissioner be appointed, if necessary, to convey the same; that a receiver be appointed to take charge of and preserve the oil produced from said property, etc.   The defendant Fitch filed a plea, in which he relied upon the statute of frauds, and also filed his answer, denying every material allegation in the bill, and also demurred to plaintiff's bill.   Depositions were taken and filed by both plaintiff and defendants.   The plea filed by defendants was excepted to, and the exception sustained, and the cause heard upon the depositions filed.   The plaintiff's bill was dismissed, and from this decree the plaintiff obtained this appeal.

The first assignment of error claims that the court erred in dismissing the plaintiff's bill; the second, that the court erred in not decreeing the one-eighth of the leasehold described in the bill to plaintiff; and, sixth, the court erred because the jugdment was contrary to the law and the evidence.   These assignments raise the same questions, and may be considered together.   The evidence discloses the fact that there was an agreement between Fitch, Lowther, Thompson, and the plaintiff to jointly procure a lease for oil and gas purposes on a certain ten-acre tract belonging to William Ferrell and said parties were to share equally in the expenses and profits of same leasehold, for which they were to pay forty dollars.   It appears that Fitch obtained said lease, and took it in his own name, and, when the time came to assign to each party his respective portion of one-fourth thereof, Fitch deceived and misled plaintiff by his false representations, and thereby induced him to accept one-eighth instead of one-fourth.   Now, what was the legal effect of this state of facts?   A court of equity surely would not permit the plaintiff to be deprived of the benefit of his contract by false and fraudulent representations. The contract alleged in the bill and shown, I think, by the weight of evidence, raised a trust in favor of the plaintiff.

In *Walraven* v. *Lock,2* Patt. & H. 547, it is held that: "If one purchases a piece of land, and takes a deed in his own name under a parol agreement with another that it is for his benefit, and that he may, within a reasonable time, by paying a certain sum, become entitled to the land, a trust is raised in favor of the latter, and the agreement may be proved in favor of the latter, and the agreement may be proved by parol evidence. The statute of frauds has no application to such case." In support of this proposition, see also, *Currence* v. *Ward,* 43 W. Va. 368, (23 S. E. 329), where it is held that "neither an express nor constructive trust in lands need be created, declared, or proven in writing in this State, but may be shown by oral evidence." Without entering into a strict analysis of the testimony taken in the cause, the allegations of the bill seem to be sustained by the weight of the testimony. Thompson, one of the original parties to the contract, says that, before the assignment of one-fourth of said lease was made to him and one-eighth to Potts, Fitch told him that he had heard that the Wood well had come in, and was showing for a good one, and he remarked, "We had better make out the assignment at once." This was before dinner, and after dinner they went to witness room to make out the assignments, and, while writing the same, he asked Fitch the amount of Mr. Potts' interest, so that he could specify it in the assignment, and Fitch replied, "One-eighth." Mr. Potts was present, and demurred against one-eighth interest, claiming that one-fourth had been promised him. The substance of Fitch's reply was that he could not give him a greater interest, because Dr. Lowther had taken a half interest, and, if he assigned one-fourth to plaintiff and one-fourth to Thompson, he would have nothing himself. That the plaintiff was to have one-fourth interest in the lease is shown by the testimony of Hugh McEldowney, who says Fitch told him plaintiff took one-fourth interest; and by that of E. J. Thompson, who says it was understood that "we were to receive a quarter." This witness received his fourth, but plaintiff was reduced to one-eighht upon said false representation. Wetzel also testifies that Fitch told him that plaintiff was to have one-fourth of said ten-acre lease. It is plain from the testimony that Fitch had heard that the Wood well No. 1 was a producer, and

conceived the idea of holding three-eighths of said lease, instead of one-fourth, as originally agreed and understood; and, in order to carry out this design, represented to plaintiff that he had already assigned one-half to his father-in-law. But, when we look at Exhibit B filed with plaintiff's bill, it appears that Lowther had assigned him only one-fourth interest, clearly showing that the plaintiff was induced to accept the one-eighth by misrepresentation and fraud. The facts proven establish an agreement between Fitch, Potts, Thompson, and Lowther that Fitch should acquire the lease on said tract, and they were to share equally. This arrangement created an express trust, which, in this State, is not affected by the statute of frauds, but may be shown by oral evidence. See *Currence* v. *Ward, supra; Nease* v. *Capehart,* 8 W. Va. 95 (Syl., point 1). In *Murray* v. *Sell,* 23 W. Va. 475., SNYDER, J., delivering the opinion of the Court, said: "When the relation of trustee and cestui que trust is once established, that no subsequent dealings with the trust property by the trustees can relieve it of the trust as between him and his cestui que trust, is too well established to require argument." It appears that at the time the one-eighth was assigned to plaintiff he was ready and willing to pay for one-fourth part, as agreed in the contract, and accepted the one-eighth under protest, although he paid for it, and was prevailed on to accept it under false representations. Such being the case, after reading the testimony in the light of the authorities above quoted, I am of opinion that said Fitch obtained the lease as trustee, and held the same for himself, and the other three, and that he fraudulently withheld from the plaintiff the one-eighth part thereof, and that said plaintiff, upon the payment of the remainder of his proportionate share of the purchase money for said fourth part, is entitled to an assignment thereof, and that the court erred in dismissing the plaintiff's bill. The decree complained of is reversed, and the cause remanded.

### ON PETITION FOR REHEARING.

Counsel for W. R. Fitch, in his petition for a rehearing in this case, contends that a trust is not created in the absence of payment of purchase money. This, however, depends on the circumstances of each particular case. In

*Nease* v. *Capehart*, 8 W. Va. 95, it was held that: "When a debtor has conveyed land to a trustee to secure a debt, and afterwards another person and the debtor agree that the former shall purchase the land, and hold it as a security for the purchase money he pays, and accordingly the debtor acquiesces, and the other purchases the land, the transaction constitutes a trust, which a court of equity will enforce." The case just cited was instituted to enforce a parol contract, and no money was paid to the party who agreed to purchase the property and hold for the trust debtor. The case of, *Heiskel* v. *Powell*, 23 W. Va. 717, relied on by petitioner to show that the agreement must be followed by payment of money in order to create a trust, is very different in its facts from the one under consideration. In this case when the interest of Potts was to be assigned to him, and he was ready and willing to pay for the one-fourth interest, he was met by the false and fraudulent statement made by Fitch that he had already conveyed one-half to Lowther, his father-in-law, and that, if he conveyed to Potts one-fourth, he would have none left for himself, and thereby induced Potts to accept one-eighth. Browne, St. Frauds, § 448a, quotes from *Glass* v. *Hulbert*, 102 Mass. 35, as follows: "The fraud," says Judge Wells in *Glass* v. *Hulbert*, "most commonly treated as taking an agreement out of the statute of frauds is that which consists in setting up the statute against its performance after the other party has been induced to make expenditures, or a change of situation in regard to the subject-matter of the agreement, or upon the supposition that it was to be carried into execution, and the assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss. In such cases the party is held, by force of his acts or silent acquiescence which have misled the other to his harm, to be estopped from setting up the statute of frauds." The fraudulent representation of Fitch in this case induced Potts to change his situation in regard to the subject-matter by accepting one-eighth instead of one-fourth, and for that reason he is estopped from setting up the statute of frauds. Nothing was said about the original agreement being made as to the

seventy-four-acre tract when one-fourth was assigned to
Thompson, one-fourth to Lowther, and one-eignth to
Potts. They each were assigned portions of the ten-acre
tract, and the fact that the Wood well was a producer was
carefully concealed from Potts. In the case of *Campbell*
v. *Fetterman*, 20 W. Va. 398, it is held that collateral cir
cumstances attending the agreement, and mistake or fraud
in the procurement or execution of the agreement, may be
proved by parol evidence. See, also, 1 Pom. Eq. Jur. § 431,
note 3. Herm. Estop. p. 1072, § 946, says: Estoppels
*in pais* are well founded when confined to the legitimate
purpose of preventing one man from being injured by the
acts or misrepresentations of another." See, also Bige-
low, Estop. 712, where it is said, "It is everywhere con-
ceded, indeed, that the title to land can be affected by es-
toppel *in pais* arising from fraud." It is so apparent that
the false representations made by Fitch were induced by
the fact that he had heard that the Wood well was a pro-
ducer, and for that reason he wanted to retain as much of
this lease as possible, and made these fraudulent represen-
tations, that his reliance upon the statute of frauds cannot
avail him. Story, in his Equity Pleadings (section 767),
thus states the law: "Whatever may be the doubts in
some cases of trust, it seems clear that, where the bill
sets up a parol trust, the nonperformance of which would
be a fraud upon the plaintiff, or where the parol trust is a
secret trust, alleging to be in fraud of the public policy of
the country, a pure plea of the statue will not prevail; for
the statute will never be allowed to cover fraud." See,
also, *Haig* v. *Kaye*, 7 Ch. App. 469, where it is held that
"the statute of frauds cannot be used by a defendant to
cover a fraudulent act." It is true that in the case of
*Nash* v. *Jones*, 41 W. Va. 769, (24 S. E. 592), in one point of
the syllabus it was held that, "where a man merely employs
an agent to buy an estate, who buys it for himself, and de-
nies the trust, and no part of the purchase money is paid
by the principal, and there is no written agreement, he
cannot compel the agent to convey the estate to him, as
that would be in violation of the statute of frauds;" but in
that case the facts were materially different from the case
at bar, for Potts did not employ Fitch as his agent to buy
an estate, but Potts, Lowther, and Thompson agreed to go

in with Fitch, and purchase this lease for forty dollars, each to take one-fourth, and for convenience the lease was assigned to Fitch alone, and, no doubt, Fitch intended in good faith to assign a fourth of each of the other three, and would have done so had not the Wood well near by come in a producer. Then he conceived the idea of defrauding Potts out of one-half of his interest by falsely claiming that he had conveyed one-half to Lowther, his father-in-law, and would have none left for himself if he assigned one-fourth to Potts. The statute of frauds will not avail Fitch to cover this fraudulent act, or protect him from its effects.

For these reasons the rehearing should be refused.

*Reversed.*