## CHARLESTON.

JAMES M. MOSS *v.* W. M. AND MARY S. MOSS.

Submitted February 22, 1921. Decided March 8, 1921.

1. SPECIFIC PERFORMANCE—*Verbal Gift of Land by Father to Son Must be Supported by Clear Evidence, Possession and Improvements.*

   In order to enforce specific performance of a verbal gift of land by father to son, evidence of the gift must be direct, clear, and unambiguous, sufficient to identify the subject matter as to location and quantity, and followed by notorious and exclusive possession and substantial improvement of the same. Loose declarations of the father, without more, are not sufficient. (p. 143).

2. SAME—*Evidence Insufficient to Justify Specific Enforcement of Parol Gift of Land by Father to Son.*

   Where the proof on which depends right to relief by decree for specific performance of a parol gift of land by a father to

his son is indefinite and indecisive, and tends to disclose an intention not to vest title in the son by deed but by a devise in his will, operative after death, and in the meantime to permit the concurrent use and enjoyment of the land by both, and it is so used and enjoyed by them in common afterwards for residential, agricultural and other like purposes, and the father grants oil and gas leases and pipe line easements, and collects and appropriates the compensation therefor, and pays all taxes assessed against the land, equity will not require the father to convey the land to the son, either by a deed granting a present estate, or by one granting the property subject to a life estate reserved to the father.    (p. 144).

3.  SAME—*Parol Contract for Conveyance of Land by Father to Son Not Enforced in Absence of Definite Agreement Acted Upon.*

Nor will the court grant the relief sought on the basis of a parol contract to the same effect, likewise relied on by the son, and based upon a surrender of a valuable right as consideration therefor, where the same indefiniteness of agreement, want of exclusive possession, and failure to erect valuable improvements, which operated to defeat enforcement of the parol gift, likewise make the acts of the parties insufficient to justfy removal of the bar of the statute of frauds to permit enforcement of the verbal contract.    (p. 145).

4.  TRUSTS—*To Establish Resulting Trust, Payment of Price Must Have Occurred Before Conveyance.*

In order to establish a resulting trust in property, legal title to which is in another, upon the ground of payment of the whole or a part of the purchase money therefor, it generally is prerequisite to show that the consideration was paid, or some obligation therefor assumed, at or before the conveyance of the legal title to the grantee.    The subsequent payment or assumption thereof will not, by relation, attach such trust to the original purchase.    (p. 145).

Appeal from Circuit Court, Calhoun County.

Suit by James M. Moss against W. M. Moss and another. From the decree, defendants appeal.

*Reversed and bill dismissed.*

*Lorentz. C. Hamilton,* for appellants.
*S. P. Bell* and *A. G. Mathews,* for appellee.

LYNCH, JUDGE:

The bill is to enforce specific performance of an alleged verbal gift by W. M. Moss to his son James M. Moss in June, 1903, of a tract containing about 85 acres of land in Calhoun County. The decree complained of by defendants W. M. Moss and his wife Mary S., plaintiff's stepmother, did not grant the prayer of the bill, but treated the father as holding the title to the land in trust for himself and his son in the proportions of 530/1658 and 1128/1658, respectively, and provided that if the son should, within thirty days from its date, pay the father $530, he and his wife should within ten days thereafter convey the title to the son by an apt and proper deed; and that if the son should, within the time limit so fixed, fail to pay the $530, the father should have the option, within the next ensuing thirty-day period, to pay the son $1,128, whereupon the latter should convey all his right, title and interest in the land to the father; and in the event that neither father nor son should desire to purchase the interest of the other, the land was to be sold and the proceeds divided between the parties in the proportions named above.

The bill and no other pleading prayed for the relief granted, and no evidence introduced by either party warranted it in that form. In other words, if plaintiff was entitled to the land, the court by its decree should have vindicated that right, and if not so entitled, should have dismissed the bill. The cause presents but one of the two alternatives and no other. There is, therefore, but one question to be decided, that is, whether plaintiff by his evidence has made a case warranting the relief he seeks.

Apparently the court had serious doubt whether the evidence was sufficient to support a decree for specific performance, conceding the bill to be unobjectionable on any ground of proper challenge and that equity has jurisdiction to enforce a parol gift of land; on neither of which propositions is there any room for doubt where the intended beneficiary has entered into possession by virtue of the preconceived gratuity, made substantial improvements, and complied with

other requirements indicative of exclusive dominion over the land, with the permission, knowledge and consent of the benefactor.

Plaintiff did enter upon the land in June, 1903, soon after his marriage, or, to be more exact, continued to reside thereon with his father as he had been doing since the latter acquired the property in 1901, and has thenceforward, he says, retained exclusive possession without let or hindrance from any source, and now retains it as against his father subject to the requirement for a deed of grant therefor, the right to which now depends upon the just determination of this cause. That he has continued to reside thereon during the period stated, excepting about nine months, when for prudential reasons, as he attempts to explain, he resided elsewhere, but in the meantime tilled and used it, seems to be conceded, with this reservation, that the father relies upon the nine months' absence as a virtual abandonment of the premises. Whether the latter can or cannot derive any substantial advantage from the temporary absence from the land for residential purposes, or predicate thereon right to withhold a deed of grant on that account, it is not necessary to say: (1) Because the son reestablished his residence on the land at the end of the nine months' period with the knowledge of the father and without objection by him; and (2) it is not denied that the son retained at least a qualified or constructive control during the interim.

It is the character of plaintiff's possession and not the fact of possession about which there is such a wide and apparently irreconcilable disagreement, and on the determination of which depends the proper adjudication of the respective rights of the parties. In other words, there is no question as to plaintiff's right to occupy the land during the life of his father and stepmother, but this right of occupancy, the father contends, is subject to his right to control and exercise such dominion over the land as he may desire or deem necessary for the use of himself and wife while living, and upon the death of both to become and remain the property of the son.

For residential and tillage purposes plaintiff has occupied the 85 acres continuously from June, 1903, to the date of the institution of this suit in 1917, a period of fourteen years. But at no time was his occupancy exclusive or his dominion complete. Both families lived on the tract, part of the time in the same house, until the year 1909 or 1910, when the father moved on to an adjoining 31-acre parcel where he has since continued to reside. His change of residence to the smaller tract, however, did not effect a discontinuance of his use of the 85 acres, according to his testimony sustained by other proof. Until the controversy reached an acute stage due to an altercation and personal encounter between father and son, each of them farmed and used parts of the larger tract in different ways and for different purposes, each taking to himself the fruits of his labor. Much testimony goes to show that each of them performed labor, expended money to improve the land, as by building fences, sowing grass seed, planting fruit trees, repairing buildings, including the dwelling house and outhouses, digging a well, clearing and grubbing, and used it for the pasture of stock individually owned by them. Plaintiff, it seems, with the assistance of his father, constructed a small log house to be used as a residence for himself and family, a corn crib and smokehouse, but the value of these admittedly is slight. True, plaintiff testifies that he expended $200 of his wife's money in purchasing fencing wire and fruit trees and in clearing part of the tract, and in this she corroborates him. Even granting that they have expended all that they claim to have spent in improvements and upkeep, though the testimony in support thereof, including their own, is by no means definite and positive, the aggregate is slight when considered in connection with the number of years they have been living on the property. There is some conflict in the testimony with regard to whether the residence occupied by defendants on the 85 acres until 1909 or 1910 was built before or after the date of the alleged gift in 1903, the father contending that it was erected after, and plaintiff before, that date. The same conflict obtains with regard to the two barns built and

used by them on the property. But whatever the date, there is no doubt that defendant, not plaintiff, erected them.

As already noted, both families continued to reside on the 85 acres until defendants moved to the 31-acre parcel where their residence now is, and since their departure plaintiff has occupied the home thus left vacant. But the father continued to exercise dominion and control over the larger tract. He leased it for oil and gas purposes, granted a pipe line right of way through it, and to his own use appropriated the rentals for the lease and consideration for the right of way, and paid the taxes assessed against the land. That he paid the taxes the son admits, but accompanies the admission with the explanation that, as the father collected the rentals and compensation for the lease and right of way, he should in return therefor protect the land from the consequences of the delinquency that must have ensued upon their nonpayment, especially since he held the legal title to the 85-acre tract and was chargeable and charged therewith on the landbooks of the county. The testimony as to the facts is grossly conflicting, except that relating to the lease and pipe line easement and the assessment and payment of taxes, as to which there is no dispute.

Judged by the testimony, though in some respects inconsistent, the work and labor performed by the father and son combined did not substantially enhance the value of the land. Some witnesses even express the opinion that it was less valuable after than it was before the labor was performed and money expended upon it. Others also attribute to the son the casual remark that he did not intend to do anything more by way of improving the land than was necessary to support himself and family, because of the uncertainty of his father's intention to vest the title in him.

The most substantial or at least the most reasonable view of the respective rights of the parties is the agreement predicated upon these facts: Sometime prior to 1900 the father purchased and paid the full consideration for a tract of 51 acres of land in Roane County and caused the deed of grant to be made to his wife and two children, plaintiff and his

sister, none of whom except defendant Mary S. Moss was at that time twenty-one years of age. This tract the father and his wife sold and conveyed to a purchaser for $510 sometime prior to the date of the alleged gift to plaintiff in 1903, upon the assurance to the purchaser that when the minor grantees attained their majority, they also would unite in the execution of a deed to him, as they afterwards did in 1904, with the understanding, as plaintiff claims, that the 85 acres which the father had purchased with part of the consideration derived from the sale of the Roane County land was to take the place of his interest in the latter tract, but as the father claims, that he would by his will devise the 85 acres to plaintiff and the adjoining 70½ acres to his daughter, the wife of Howard Metz, Mrs. Metz and the plaintiff being his only children and the two tracts his only real estate, except the 31-acre parcel already referred to. Because part of the consideration derived from the sale of the Roane County land was used in the purchase of the 85 acres, plaintiff claims that such appropriation of his one-third share of the proceeds, or $170, gives him an additional equitable interest in the latter tract. But even if his consent to unite in the deed granting the Roane County land should be sufficient consideration to support defendant's oral promise to give him the 85 acres in return therefor, thereby making it an oral contract to exchange properties instead of a parol gift, yet it has repeatedly been held that payment of consideration alone is not enough to remove the bar of the statute of frauds. *Gallagher* v. *Gallagher*, 31 W. Va. 9; *Miller* v. *Lorentz*, 39 W. Va. 160; *Summers* v. *Hively*, 78 W. Va. 53; *Gibson* v. *Stalnaker*, 87 W. Va. 710, 106 S. E. 243, recently decided and not yet officially reported. More depends upon the character of the possession and improvements made thereunder than upon the payment of the consideration.

However that may be, there is another potent fact to be considered in connection with the conveyance of the 51 acres. There is testimony sufficient to warrant the inference that the promise made by the father on that occasion, and on other occasions when discussing his intention as to the 85-

acre tract, was that he would by will devise the latter tract to plaintiff. If that was the understanding, the promise tends strongly to support the father's view that not until his death was the title to that tract to become vested in plaintiff. That such was the real intention seems to find strong corroboration in the testimony of the plaintiff himself, for he telephoned to the attorney employed by the father to write his will for the sole purpose, as he admits, of ascertaining whether the will so prepared did in fact contain the provision promised by the father, and was assured that the will was favorable to him, the son. The anxiety prompting the inquiry is not explainable upon any hypothesis other than that there was such an agreement or understanding, and that upon that basis plaintiff entered upon the cultivation of the 85-acre tract and joined in the execution of the deed for the 51 acres. *Short* v. *Patton,* 79 W. Va. 179.

But defendants contend that even if these facts be not sufficient to show lack of right to require specific execution of the contract relied on by plaintiff, the latter afterwards by deed, acting as intermediary between his father and stepmother, vested the fee simple title to the 70½ and 85-acre tracts in the latter in 1905, and she later in her husband, W. M. Moss, in February, 1917, through W. M. Price as intermediary, and also that by this act plaintiff recognized the substantial ownership of the 85-acre tract to be in his father. To the participants in this transaction the bill imputes no fraudulent intent, nor is there proof of an intention to defraud, though plaintiff does show by Price that no consideration was paid or promised to him for the part he took in the latter transaction, and by himself that the purpose of the deed to Mrs. Moss was to protect the property of his father from the probable award against him of a judgment for a fine and costs in the prosecution of an indictment for a felony then pending against him. But even if the bill did seek to impeach these transactions as fraudulent, the allegation to that effect would not avail plaintiff, who, so far as disclosed, voluntarily participated in its consummation. For by the unanimous concurrence of judicial decisions and

text writers, a conveyance, however fraudulent the intention, is valid as to the parties who with knowledge of the purpose voluntarily enter into the transaction. *Core* v. *Cunningham,* 27 W. Va. 206; *Holmes* v. *Harshberger,* 31 W. Va. 516; *Poling* v. *Williams,* 55 W. Va. 69; 12 R. C. L. p. 473. What is said in this connection, though not controlling, merely shows the futility of the indirect challenge to the motives prompting the execution of these deeds. They vest the title where it was on the date of the alleged gift and in nowise militate against enforced performance of the parol agreement. But it is the divestative fact witnessed by the consummated transaction upon which defendants rely, because, they say, it weighs heavily, if not preclusively, in that it shows the futility of depending upon a gift made two years before. According to their contention, the deed executed in 1905 goes far towards defeating the right to compel the execution of a deed for land so claimed by plaintiff; and he does not pretend that W. M. Moss thereafter reaffirmed his intention to convey the land to him otherwise than by a devise. But the transfer of the title in this manner, being contemporaneous, constitutes but one transaction, and as its ultimate aim was to reinvest the title where it originally was, it can have no such effect as that for which defendants claim.

There is, it is true, some loose, perhaps exaggerated language attributed to the father by various witnesses, and which by a forced construction, may have led some of them to believe in the existence of an intention and purpose on his part to bestow upon his only son title to the tract now claimed by him. But little of this testimony really warrants even the inference of an intention to part with the title before the death of the father and wife, both of whom now are well advanced in years and no longer able to engage in manual labor as doubtless they once did, for it was in this manner that they were enabled to pay for the land they own. The assistance of the son, then a minor, if any he rendered, was such only as was due from him in discharge of his filial duties.

"To establish an equitable title to land in a child, under a parol gift thereof by the parent, it is necesary to prove, by

direct, unequivocal and clear evidence, the gift, identification of the subject matter as to location and quantity, notorious and exclusive possession thereof, and substantial improvement of the same." *Short* v. *Patton,* 79 W. Va. 179, pt. 1, Syl; *White* v. *White,* 64 W. Va. 30; *Meadows* v. *Meadows,* 60 W. Va. 34; *Holsberry* v. *Harris,* 56 W. Va. 320; *Miller* v. *Lorentz,* 39 W. Va. 160; *Harrison* v. *Harrison,* 36 W. Va. 556.    Three important elements to be considered in such cases are here clouded in doubt, uncertainty and ambiguity, and a fourth points directly to the support of defendant's contention.    There is direct conflict in the testimony of the respective parties with regard to the father's intent to bestow the gratuity, the son insisting it was a present gift with full rights and enjoyment, the father that legal title was to pass only upon his death, with the right bestowed upon the son to enjoy possession of the tract in the meantime concurrent with the father.    The evidence is not as direct, clear and positive in support of plaintiff's position as the law requires; indeed, the preponderance is adverse to his claim.    There is similar conflict with respect to the exclusiveness of plaintiff's possession, and on this issue much testimony to show that the father continued down to the time of the institution of the suit to exercise control over    such portions of the tract as he desired.    As said in *Holsberry* v. *Harris, supra*: "Such possession of a son under an alleged gift    must be definite and exclusive and not concurrent with the father."    Moreover, the improvements made by him are not of such substantial and permanent character as is required in such cases.    And finally it is conceded that the father has paid all the taxes on the property since the year 1901 when he first acquired it.    The case of *Berry* v. *Berry,* 83 W. Va. 763, relied on by plaintiff, is clearly distinguishable from this in the exclusiveness of the donee's possession and her substantial contribution to the valuable improvements made on the property.

From a consideration of all these facts and circumstances, we are of opinion that plaintiff has failed to establish    by direct, positive and unambiguous proof that the gift took the form for which he contends.    Much testimony supports the

father's position; in fact, the preponderance of the evidence tends to uphold his contention.    The care and high quality of proof which must be exercised and required in cases of this character is well illustrated by the experience of the Commonwealth of Virginia.    The specific enforcement of parol gifts of land became such a prolific source of fraud in that state that a statute was enacted prohibiting the enforcement of such gifts, even when followed by possession thereunder and improvement of the land by the donee or those claiming under him. *Wohlford* v. *Wohlford*, 121 Va. 699; *Brooks* v. *Clintsman*, 124 Va. 736.

But plaintiff insists that even if he is not entitled at this time, under the evidence, to specific performance of the alleged gift, yet, accepting defendants' interpretation of the conversation with respect to the 85-acre tract as postponing plaintiff's right thereto until the death of his father and stepmother, even that right should be protected and safeguarded by a decree requiring them to execute a deed conveying to him the property in question, subject to a life estate reserved for them; this upon the theory that plaintiff's consent to unite in the deed of 1904, conveying his interest in the Roane County 51 acres, was sufficient consideration to support his father's oral promise to give him the 85 acres in lieu thereof.    But treating this agreement as a contract for the exchange of properties instead of as a parol gift, we are again confronted by the positive inhibition of the statute of frauds, and the same indefiniteness of agreement, want of valuable improvements, and concurrent possession and control with his father, which operated to defeat enforcement of the parol gift, are equally insufficient to justify removal of the statutory bar from the former.    *Gibson* v. *Stalnaker*, 87 W. Va. 710, 106 S. E. 243, recently decided.

Plaintiff rests his final claim for relief upon the ground that, because of his execution of the deed of 1904 conveying his one-third interest in the Roane County land, previously sold by his father, the consideration from which was in part used by the latter in paying for the 85 acres acquired in 1901, a resulting or constructive trust has arisen in his favor which may be established by parol proof.    His con-

tention as to the admissibility of parol testimony to establish such a trust is undoubtedly sound. *Currence* v. *Ward,* 43 W. Va. 367. And it is equally true as a general proposition that where, upon purchase of property, the conveyance of the legal title is taken in the name of one person, while the whole or part of the consideration is given or paid by another, not as a loan to the grantee, a resulting trust immediately arises from the transaction, and the person named in the conveyance will be deemed and treated as trustee for the party from whom the consideration proceeds. *Currence* v. *Ward,* cited. But there is an equally definite exception or qualification to the operation of the rule, namely, that the consideration must be paid, or some obligation assumed therefor, at or before the sale and conveyance of the legal title to the grantee, and the subsequent payment or assumption thereof will not, by relation, attach such trust to the original purchase. *Smith* v. *Turley,* 32 W. Va. 14; *Currence* v. *Ward,* 43 W. Va. 367; *Harris* v. *Elliott,* 45 W. Va. 245; *Moore* v. *Mustoe,* 47 W. Va. 549; *Watts Brothers* v. *Frith,* 79 W. Va. 89; 1 Perry on Trusts (6th Ed.) §126; 39 Cyc. 128; 26 R. C. L. p. 1223.

Whatever the date of defendant's sale of the 51 acres in Roane County, it of course did not affect plaintiff's title to or interest in it until 1904, when he and his sister executed a deed conveying their right, title and interest to the purchaser. His father already had acquired the legal title to the 85 acres three years prior to the son's execution of his deed. The fact that the purchaser advanced part or all of the consideration for the 51 acres in reliance upon the father's assurance that his children would execute a deed on coming of age, and that the father applied part of this money to payment of the purchase price of the 85 acres, cannot aid plaintiff, for he yielded nothing of his interest in the Roane County land till 1904. Even granting that his interest therein was a valuable one, owned by him in his own right, though he paid nothing for it, his father having voluntarily had the deed made to his wife and two children jointly while the latter were minors, yet until 1904 he had surrendered no part of it, and before he executed the deed

his father had completed paying for the 85 acre tract. Hence under all the authorities no resulting trust could or did arise in his behalf.

For these reasons we are of opinion to reverse the decree, dismiss the bill, and award defendants their costs incurred upon this appeal and in the circuit court.

*Reversed and bill dismissed.*